UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EUGENE HATCHER,

                                       Plaintiff,

                                                                         <u>DECISION AND ORDER</u>

                                                                         10-CV-6365L

                          v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                                       Defendant.
_____

       Plaintiff appeals from a denial of Supplemental Security Income and disability insurance benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner.

       On August 1, 2006, plaintiff filed an application for Supplemental Security Income and disability insurance benefits under Title II of the Social Security Act. Plaintiff alleged an inability to work since July 25, 2006, due to knee and back pain, lightheadedness, fatigue, and HIV infection. (T. 98). His applications were initially denied. Plaintiff requested a hearing, which was held on April 2, 2009 before Administrative Law Judge ("ALJ") Mark Hecht. (T. 20-38). The ALJ issued a decision on May 6, 2009, concluding that plaintiff was not disabled under the Social Security Act. (T. 9-19). That decision became the final decision of the Commissioner when the Appeals Council denied review on May 18, 2010 (T. 1-9). Plaintiff now appeals. On February 4, 2011, both the Commissioner and plaintiff moved for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the Commissioner's motion (Dkt. #5) is granted, plaintiff's motion (Dkt. #6) is denied, and the complaint is dismissed.

DISCUSSION

An ALJ proceeds though a prescribed five-step evaluation in determining whether a claimant is disabled within the meaning of the Social Security Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 CFR §404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ continues to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe," e.g., that imposes significant restrictions on the claimant's ability to perform basic work activities.  20 CFR §404.1520(c).  If not, the analysis concludes with a finding of "not disabled."  If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4.  If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §404.1509), the claimant is disabled.  If not, the ALJ's analysis proceeds to step four, and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis notwithstanding limitations for the collective impairments.  *See* 20 CFR §404.1520(e), (f).

The ALJ then turns to whether the claimant's RFC permits him to perform the requirements of his past relevant work.  If so, the claimant is not disabled.  If not, analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).  *See* 20 CFR §404.1560(c).

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).  Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770,  774 (2d Cir. 1998)  *quoting  Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997).  Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

The same level of deference does not encompass the Commissioner's conclusions of law. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984).  This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112.  Therefore, this Court first examines the legal standards applied, and then, if the standards were correctly applied, considers the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987).  *See also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998).

The ALJ's decision discusses plaintiff's claim of disability at length, and identifies the record evidence supporting each of his findings.  Upon a full and thoughtful review of the record, I believe that the ALJ applied the correct legal standards.

I also find that substantial evidence supports the ALJ's conclusion that plaintiff, then a fifty-year-old man with a high school education and previous work as a construction worker,

housekeeper, mason, tent setup/caterer, smoke house operator, potato picker bottle assembler, waste management worker, furniture assembly worker, and Walmart bag carrier, was not totally disabled, due to the ALJ's finding that the plaintiff is capable of performing a complete range of work at the light exertional level.

The ALJ found that plaintiff had severe impairments including a right knee disorder, chronic proteinuria (excess protein in the urine), asymptomatic HIV infection, and low back pain. (T. 14-15). At the hearing, plaintiff testified that his primary complaints were right knee and back pain, and that he did not believe that any of his other conditions would affect his ability to return to work. (T. 34).

Plaintiff's treatment records reflect a pattern of intermittent complaints of lower back pain, and to a lesser extent knee and/or shoulder pain, treated with limited success through medications and cortisone injections by several different physicians, but no appreciable physical limitations.

Since 2007, plaintiff treated regularly with certified physicians' assistant Amy Kallio. In determining the plaintiff's RFC, the ALJ rejected Ms. Kallio's opinion, as well as a check-sheet completed by Dr. Padma Parthasarathy, a physician in the same practice as Ms. Kallio, and declined to afford them controlling or significant weight. Instead, the ALJ relied upon the opinions of consultative examiner Dr. Ramon Medalle, as well as the treatment records by plaintiff's other treating physicians and medical sources, including Dr. Marvin Grieff, registered nurse practitioner Jane Sassone, and physicians' assistant Charles Schreiber (T. 17-18).

It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)(emphasis added). *See* 20 C.F.R. § 404.1527(d)(2). In determining the weight owed to a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating

physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §404.1527(d). The ALJ must then articulate his reasons for assigning the weight that he does to both treating and nontreating physicians' opinions. *See* 20 C.F.R. §404.1527(d)(2); §404.1527(f)(2)(ii); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

With respect to Dr. Parthasarathy, who allegedly completed a one-page (unsigned) form opining that plaintiff had "moderate" limitations with respect to "prolonged" walking, standing, sitting and climbing as of August 2007 (T. 319), I find that the ALJ properly declined to grant controlling weight to that form. Initially, there is no evidence of a direct or ongoing treatment history between plaintiff and Dr. Parthasarathy. In any event, the checklist form she completed sets forth no medical basis or explanation for the significant limitations it lists, and is otherwise unsupported by any objective medical findings or test results.

The parties do not dispute that as a physicians assistant, Ms. Kallio is not a "treating physician" for purposes of the rule, but rather an "acceptable medical source," the opinions of whom are not required to be given controlling weight by the ALJ. However, plaintiff urges that the ALJ should have exercised his discretion to afford significant (if not controlling) weight to Ms. Kallio's opinion and not to examining agency physicians, due to her long history with plaintiff, and her resultant superior knowledge of his abilities and limitations.

I find that the ALJ's determination -- that the check-sheet completed Dr. Parthasarathy and opinion of Ms. Kallio were not respectively entitled to controlling or significant weight -- took account of the necessary factors, and was not erroneous. The ALJ correctly observed that those reports conflicted with the bulk of the medical evidence in the record, including the treatment notes of plaintiff's other treating physicians and acceptable medical sources, in that they described a level of disability far in excess of that reflected in the rest of the record. For example, in Ms. Kallio's February 24, 2009 RFC report, plaintiff's abilities to walk, stand, sit, push, pull, and bend were characterized as "very limited," indicating that plaintiff could perform

each for no more than one to two hours. (T. 291). These conclusions were unsupported by any objective findings, and are inconsistent with all objective evidence of record, as well as plaintiff's testimony concerning his daily activities.

In contrast, Dr. Medalle performed an exhaustive battery of tests when he examined plaintiff on December 28, 2006 (T. 212-216). Imaging studies showed large bone spurs on plaintiff's spine, but otherwise were normal, showing no disc narrowing, herniation, or cord or root impingement. (T. 217). Testing of plaintiff's cervical and thoracic spine showed full flexion, extension, lateral flexion bilaterally, and rotary movement. Plaintiff had a full range of motion in his shoulders, elbows, forearms, wrists, hips, knees and ankles, and his strength was 5/5 in both the upper and lower extremities, with no muscle atrophy evident. His gait was normal and he used no assistive devices. The only limitation in flexibility or strength that was revealed in testing was that flexion of the plaintiff's lumbar spine was limited to 80 degrees. On that basis, Dr. Medalle diagnosed plaintiff with arthritis of the lumbar spine and possible arthritis of the right knee, and opined that plaintiff was mildly limited in activities requiring bending and heavy lifting. *Id*.

The level of disability indicated by Ms. Kallio also conflicts with the treatment notes from plaintiff's treating physicians, including Dr. Grieff, physicians' assistant Schreiber, and registered nurse practitioner Jane Sassone. Those notes consistently describe plaintiff's condition as "well," and unremarkable, with "intermittent" complaints of back pain, treated with medications and described as "minimal" or "mild," normal motor strength and reflexes, and generally normal gait and range of motion. *See e.g.*, T. 176, 198-200, 227-229, 240-244, 257-265, 273-277, 283, 312, 406-410).

The ALJ's finding that plaintiff's RFC includes the full range of light work is also consistent with the plaintiff's testimony concerning his daily activities, which include living independently, shopping, preparing meals, performing housework, caring for personal needs, reading, watching television, attending social functions, visiting with friends, using public

transportation, and periodic weight-lifting and exercise in order to prevent joint stiffness.  (T. 33, 106-110, 173, 213, 286).

I have considered the remainder of plaintiff's arguments, and find them to be without merit.  In light of the ALJ's well-supported determination that plaintiff, a "younger individual" at the time of his application, retained the RFC to perform the full range of work at the light exertional level (e.g., plaintiff could stand and walk for up to 6 hours in an 8 hour day, lift 10 lbs. frequently and 20 lbs. occasionally), the ALJ properly determined that Medical-Vocational Rule 202.21 directs a finding of "not disabled."

Based on the foregoing, I believe the ALJ applied the proper procedure and that his decision is supported by substantial evidence.  I find no reason to modify that decision.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings (Dkt. #5) is granted, and plaintiff's motion for judgment on the pleadings (Dkt. #6) is denied.  The Commissioner's decision that plaintiff, Eugene Hatcher, was not disabled is in all respects affirmed, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 5, 2011.